**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FACTOR ONE SOURCE PHAMARCY, LLC and FAST ACCESS SPECIALTY PHARMACY, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>BLUE CROSS BLUE SHIELD OF ILLINOIS,<br><br>Defendant. | NO. 1:24-CV-07877<br><br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

Two specialty pharmacies, Factor One Source Pharmacy and Fast Access Specialty Pharmacy, are part of a business called InfuCare. R. 1, Compl. ¶¶ 1, 19–21.[1] InfuCare alleges that Blue Cross Blue Shield of Illinois breached a contractual obligation to pay for medication that InfuCare provided to three of Blue Cross's insureds in 2021.[2] *Id.* ¶¶ 15–17, 19–22, 211–50. In the alternative, InfuCare alleges that it is entitled to the value of the medication under a *quantum meruit* (that is, unjust

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]This Court has diversity jurisdiction over this case under 28 U.S.C. § 1332. The amount in controversy exceeds $75,000. *See* Compl. ¶¶ 227, 250. Complete diversity exists between the parties. Factor One Source Pharmacy is a Maryland limited liability company. *Id.* ¶ 19. The sole member of Factor One Source Pharmacy, LLC, is InfuCare Rx, Inc., a New Jersey corporation with its principal place of business in New Jersey. *Id.* ¶ 20. Fast Access Pharmacy is a Louisiana limited liability company. *Id.* ¶ 21. The sole member of Fast Access Pharmacy, LLC, is Factor One Source Pharmacy (which is a New Jersey citizen). *Id.* ¶ 22. Blue Cross Blue Shield of Illinois is an Illinois corporation with its principal place of business in Illinois. *Id.* ¶¶ 23, 28.

enrichment) theory. *Id.* ¶¶ 251–54. Blue Cross moves to dismiss the complaint under Civil Rule 12(b)(6). R. 74, Def.'s Mot. For the reasons discussed in the Opinion, the motion is denied.

## I. Background

In deciding a motion to dismiss, the Court accepts well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Factor One Source Pharmacy and Fast Access Specialty Pharmacy are both specialty pharmacies that distribute infusion medications under the business name InfuCare. Compl. ¶ 1. When patients receive a prescription from their physician, they normally take that prescription to a pharmacy to have it filled. *Id.* ¶ 2. Before filling the patient's prescription, specialty pharmacies often obtain prior authorization from the patient's insurer. *Id.* But there are two other layers between the pharmacies and the insurer: a regional carrier (here, Caremark) that manages pharmacy benefits for the insurer and a "local plan provider" that (among other things) acts as a "prior authorization agent" for Caremark. *Id.* ¶ 9. At the end the day, however, Blue Cross is the "ultimate payor" of the prescription costs. *Id.*

InfuCare does not have a network provider agreement with Blue Cross. Compl. ¶ 45. Instead, InfuCare alleges that if it is "in network" with the local plan provider (CareFirst) that acts as a prior authorization agent, then InfuCare is "in network" with Blue Cross. *Id.* ¶¶ 9, 46. InfuCare also alleges that it is a known custom within the specialty pharmacy industry that when a written agreement does not exist

between a pharmacy and Blue Cross, then Blue Cross will pay the pharmacy the usual-and-customary rate for specialty medications. *Id.* ¶ 194. This information, according to InfuCare, is published on Blue Cross's website. *Id.* Specifically, Blue Cross's website allegedly states that it will pay the lower of "the out-of-network provider's actual charge billed to the member" or "the reasonable and customary amount," "the usual customary, and reasonable amount," "the prevailing rate," or other terms that premise payment on what is charged by a healthcare professional in a geographic area for their services.[3] *Id.* ¶ 195. Based on text allegedly available on Blue Cross's website, Blue Cross also uses the FAIR Health databases to determine the reimbursement for out-of-network products and services. *Id.* ¶ 196.

In this case, three individuals, all of whom suffer from hemophilia and are insured by Blue Cross, sought to have their prescriptions filled at an InfuCare specialty pharmacy in 2021. Compl. ¶ 5–6, 12. Before filling the prescriptions for those insureds, InfuCare allegedly had oral discussions, through CareFirst, with Blue Cross. *Id.* ¶ 8, 198. During those discussions, Blue Cross allegedly told InfuCare that no prior authorization was needed before the specialty medication—which prevents hemophiliacs from hemorrhaging and bleeding to death—was dispensed to the insureds, and that InfuCare would be paid the usual-and-customary rate for dispensing the

[3]Blue Cross asserts that this language comes from another health insurer's website. Def.'s Br. at 12 n.5. Perhaps discovery will reveal the accuracy of that assertion (and one would think that InfuCare would want to get that right), but at the pleading stage, the Court must accept the allegation as true. Also, Blue Cross does not argue that the relevant language has never appeared on its website; rather, it argues that this language does not *currently* appear on its website. *See* Def.'s Br. at 12 n.5. And the relevant website language is from 2021, not 2026. So the allegation must be accepted for now.

medication. *Id.* ¶¶ 5, 8, 198. InfuCare also alleges that Blue Cross was notified via phone that the medication fills for the three insureds were approved when CareFirst first authorized them, but did not tell InfuCare that the fills were wrong or unauthorized. *Id.* ¶ 13. InfuCare then dispensed the medication to the three insured individuals, relying on Blue Cross's alleged oral assurances and written preapprovals that InfuCare would be paid in full for claims submitted. *Id.* ¶¶ 12, 14, 200.

Despite dispensing the medication to the three insureds and submitting its claims, InfuCare allegedly did not receive full payment from Blue Cross, resulting in an alleged unpaid balance of $6,649,784.35. Compl. ¶¶ 12, 14. So InfuCare brings this suit, alleging claims for breach of contract. *Id.* ¶¶ 211–50. InfuCare also brings an unjust-enrichment claim. *Id.* ¶¶ 251–54. Blue Cross moves to dismiss InfuCare's complaint in its entirety under Civil Rule 12(b)(6) for failure to state a claim. Def.'s Mot.; R. 75, Def.'s Br. at 1.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[4] The Seventh Circuit has

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). At the same time, the Supreme Court instructs that "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task." *Iqbal*, 556 U.S. at 679. The Seventh Circuit has drawn a context-dependent distinction between relatively straightforward employment discrimination claims versus more complex claims. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## III. Analysis

### A. Breach of Express Contract

Blue Cross argues that InfuCare fails to adequately state a claim for breach of an express contract because InfuCare has not alleged an offer and acceptance of definite and certain terms, and has not alleged a meeting of the minds between the

parties. Def.'s Br. at 5–10. InfuCare responds that it has alleged that Blue Cross made repeated oral authorizations and assurances that InfuCare would be compensated at the usual-and-customary rate, which combined with common industry standards for distribution of the medication, are enough to establish the existence of an offer, and that InfuCare accepted the offer by filling the insureds' prescriptions. R. 80, Pls.' Resp. at 7. InfuCare also responds that it sufficiently alleged a meeting of the minds because InfuCare's communications with Blue Cross were not limited to a routine verification of coverage. *Id.* at 11–13.

"Under Illinois law, the elements of a breach of contract cause of action are '(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages.'" *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007) (quoting *MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC*, 845 N.E.2d 22, 30 (Ill. App. Ct. 2006)). "The question of the existence of a contract is a matter of law for determination by the court." *Arneson v. Bd. of Trs.,* 569 N.E.2d 252, 256 (Ill. App. Ct. 1991). For there to be a valid contract, "an offer must be so definite as to its material terms or require such definite terms in the acceptance that the promises and performances to be rendered by each party are reasonably certain." *In re Marriage of Murphy*, 834 N.E.2d 56, 66 (Ill. App. Ct. 2005). "An enforceable contract must also include a meeting of the minds or mutual assent to the terms of the contract." *Id.* In Illinois, "[o]ral agreements are binding so long as there is an offer, an acceptance, and a

meeting of the minds as to the terms of the agreement." *Bruzas v. Richardson*, 945 N.E.2d 1208, 1215 (Ill. App. Ct. 2011).

According to Blue Cross, InfuCare failed to allege that Blue Cross represented that it would reimburse InfuCare at the usual-and-customary rate for filling the prescriptions in the calls between the parties, or that reimbursement terms were even discussed. Def.'s Br. at 7. True, standing alone, coverage verification and treatment preauthorization do not necessarily establish an agreement that an insurer agreed to pay the billed rates. *Nw. Mem'l Healthcare v. Anthem Ins. Cos.*, 2022 WL 1620025, at *2 (N.D. Ill. May 23, 2022); *see also Chiron Recovery Ctr., LLC v. United Healthcare Servs., Inc.*, 2020 WL 3547047, at *7 (S.D. Fla. June 30, 2020) ("Courts across the country agree that an insurer's verification of coverage is not a promise to pay a certain amount.").

But that is not all that InfuCare alleges. InfuCare alleges that its communications with Blue Cross, *together* with Blue Cross's customary practice in the specialty pharmacy industry, conveyed that the claims for the medications would be paid at the usual-and-customary rate. Compl. ¶¶ 194–96, 198–99. Blue Cross responds that "the extraordinary nature of the 'treatment and disease' is irrelevant to the contents or purpose of the verification calls," but Blue Cross offers no citations to cases or explanations about why that is so. R. 84, Def.'s Reply at 3 (quoting Pls.' Resp. at 11). And under Illinois law, "absent terms to [an] agreement may be supplied by implying an obligation of good faith and fair dealing, and course of dealing and usage of trade, or by reasonable inferences as to what was intended by the parties." *Preferred Enteral*

*Sys., Inc. v. Cent. Home, Inc.*, 660 N.E.2d 174, 178 (Ill. App. Ct. 1995). The extraordinary purpose of the medication (life-saving) and the extraordinary cost of the medication are relevant facts to consider in evaluating the plausibility of InfuCare's claim.

Next, Blue Cross argues that the verification of a patient's benefits and eligibility is a routine process that does not create a binding contract. Def.'s Br. at 6 n.3. But the cases cited by Blue Cross are different from this one.[5] First, *Tenet Healthsystem Desert, Inc. v. Fortis Insurance Co.*, 520 F. Supp. 2d 1184 (C.D. Cal. 2007), held that—at the summary judgment stage—the parties had not mutually consented to enter into a contract, and the court there decided the issue *after* the defendant had presented evidence that the calls between the parties involved verification, not authorization, of services, and that the plaintiff did not speak to someone in the only unit that was allowed to evaluate and issue authorizations. *Id.* at 1194.

The next cited case, *Centro Medico Panamericano, Ltd. v. Laborers' Welfare Fund*, 33 N.E.3d 691 (Ill. App. Ct. 2015), likewise does not help Blue Cross. In *Centro*

[5]In its briefing, Blue Cross also cites *Association Benefit Services, Inc. v. Caremark RX, Inc.*, 493 F.3d 841 (7th Cir. 2007), in which the Seventh Circuit affirmed the district court's holding that there was not a valid and enforceable contract because of a lack of sufficiently definite and certain terms at the summary judgment stage, *id.* at 850. Def.'s Br. at 6, 8. Blue Cross also cites *Mannion v. Stallings & Co.*, 561 N.E.2d 1134, 1138–39 (Ill. App. Ct. 1990), in which the appellate court held that the trial court's determination that the plaintiff failed to meet his burden as to the elements of his breach of contract claim was "against the manifest weight of the evidence," noting that "[t]he record … reveal[ed] little evidence to show a meeting of the minds of the parties," *id.* at 1138–39. Def.'s Br. at 7–8. These cases fail to bolster Blue Cross's argument in part because the courts were ruling at the summary judgment stage, as opposed to the pleading stage. Finally, Blue Cross also cites *Richco Plastic Co. v. IMS Co.*, 681 N.E.2d 56 (Ill. App. Ct. 1997), in which the appellate court held that the trial court erred in entering judgment on the pleadings in favor of the plaintiff because the defendant denied that the plaintiff accepted an offer, so a triable issue of fact existed, *id.* at 59. Def.'s Br. at 6.

*Medico*, the court held—again at the summary judgment stage—that verification calls that "discussed levels of benefits and limitations on coverage" were not an "unambiguous promise" made by the defendant "to the extent of insurance coverage." 33 N.E.3d at 694–95. InfuCare does not allege that its communications with Blue Cross were "verification calls," *see generally* Compl.; Pls.' Resp. at 7–8, and "[a]mbiguities in complaints in federal court should be interpreted in favor of plaintiffs, not defendants." *Canedy v. Boardman*, 16 F.3d 183, 188 (7th Cir. 1994) (cleaned up). So Blue Cross cannot prematurely cast the communications between itself and InfuCare as routine verification calls.

Blue Cross also argues that by failing to allege the agreed-upon price for the medication, InfuCare has failed to plead the existence of an agreement. Def.'s Br. at 7–8. It is true that InfuCare has not alleged a price term beyond the "usual and customary rate" for the medication, Compl. ¶ 199, but "[i]t is not essential that price be specifically fixed by the contract" as long as "there [is] some method agreed upon for definitely ascertaining it." *Blue Cross & Blue Shield Ass'n v. UHS of Del., Inc.*, 2014 WL 1848653, at *7 (N.D. Ill. May 8, 2014) (quoting *Anderson & Brown Co. v. Anderson*, 161 F.2d 974, 977 (7th Cir. 1947)). InfuCare plausibly alleges a pricing method by pointing to language from Blue Cross's website. Blue Cross's website allegedly states that when an insured has coverage for out-of-network products, Blue Cross will pay for the lower of "the out-of-network provider's actual charge billed to the member" or "the reasonable and customary amount," "the usual customary, and reasonable amount," or "the prevailing rate." Compl. ¶ 195. Just as importantly, InfuCare also

alleges that Blue Cross uses the FAIR Health databases to determine how much to reimburse for out-of-network products, and that it often uses the 80th percentile of the databases to calculate that amount. *Id.* ¶ 196. And, most importantly, InfuCare outright alleges that the dozens of oral and written communications with Blue Cross conveyed that the payment would be made at the usual-and-customary rate. *Id.* ¶ 198. So at the pleading stage, InfuCare has sufficiently alleged offer and acceptance of definite and certain terms.

Turning next to whether there was the requisite meeting of the minds, Blue Cross contends that InfuCare has not alleged any conduct that suggests mutual assent by the parties to form an oral agreement, and that the mere acts of benefits verification and authorization of services do not qualify as a meeting of the minds. Def.'s Br. at 8–10. InfuCare responds that it adequately alleged that Blue Cross expressly authorized the filling of the prescriptions and provided assurances that InfuCare would be paid according to industry standards. Pls.' Resp. at 11–13.

Again, the cases cited by Blue Cross fail to bolster its position because many of them were decided under a different standard of review and involved claims for promissory estoppel rather than for breach of contract. In *Advanced Ambulatory Surgical Center, Inc. v. Connecticut General Life Insurance Co.*, 261 F. Supp. 3d 889 (N.D. Ill. 2017), the court held—at the summary judgment stage—that "confirming the availability and details of a patient's insurance benefits is not a concomitant promise of payment" in its assessment of a promissory-estoppel claim, after considering evidence that "indicate[d] that [the] agents did not explicitly promise or agree to reimburse"

the plaintiff. 261 F. Supp. 3d at 896–97. The same is true in *Connecticut General Life Insurance Co. v. Southwest Surgery Center, LLC*, *see* 349 F. Supp. 3d 718, 726 (N.D. Ill. 2018) (holding that the defendant "fail[ed] to adduce any evidence of an unambiguous promise" after "three out of the four … employees making verification calls … testified affirmatively that [the insurer] never promised or guaranteed that it would pay" for the services (cleaned up)), and the state law and out-of-circuit cases cited by Blue Cross, *see Grand Ave. Surgical Ctr., Ltd. v. Health Care Servs. Corp.*, 2016 WL 7436380, at *6 (Ill. App. Ct. Dec. 22, 2016) ("The problem with [the plaintiff's] promissory estoppel claim is that it never presented any evidence that [the defendant] *unambiguously* conveyed the notion that it would reimburse [the plaintiff] for usual and customary charges." (emphasis in original)); *Ambulatory Surgical Care Facility, LLC v. Charter Oak Fire Ins. Co.*, 2016 WL 3481963, at *8 (Ill. App. Ct. June 24, 2016) (holding that plaintiffs failed to meet their burden of showing an unambiguous promise of payment, thus failing to establish a prima facie case for promissory estoppel); *Vencor Hosps. S., Inc. v. Blue Cross & Blue Shield of R.I.*, 86 F. Supp. 2d 1155, 1164–66 (S.D. Fla. 2000) (evaluating the promissory estoppel claim at the summary judgment stage). And the court in one of the out-of-circuit cases cited by Blue Cross had access to the actual transcript of the calls, which have not been provided to this Court.[6] *See Rowe Plastic Surgery of N.J., LLC v. Aetna Life Ins. Co.*, 2024 WL

[6]Blue Cross also cites *Stanford Health Care v. Blue Cross Blue Shield of North Carolina*, 2022 WL 195847 (N.D. Cal. Jan. 21, 2022), for the proposition that verification and authorization are not sufficient to support an implied-contract claim. Def.'s Br. at 9. But in *Stanford Health Care*, the court specifically noted that "plaintiffs can state a claim by

4315128, at *3 (2d Cir. Sept. 27, 2024) (comparing the allegations in the amended complaint to the call transcript).

At the pleading stage, InfuCare has adequately alleged a meeting of the minds. Blue Cross allegedly told InfuCare that no prior authorization was needed for the medication to be covered, and InfuCare allegedly had "dozens of oral and written communications" with Blue Cross that suggested, along "with [Blue Cross]'s custom in the industry," that Blue Cross would pay the usual-and-customary rate for the medication. Compl. ¶¶ 8, 198–99. So the claim for breach of express contract remains intact.

---

pleading *more* than verification of benefits and authorization of services." 2022 WL 195847, at *6 (emphasis in original). InfuCare has alleged more than verification and authorization; it alleges that Blue Cross "made many assurances to InfuCare that payment in full for one day of service would be accepted and proper for Factor One and Fast Access dispensing the [m]edication," Compl. ¶ 12, and that InfuCare and Blue Cross engaged in "dozens of oral and written communications, which together with [Blue Cross]'s custom in the industry," led InfuCare to believe that it would be paid the usual-and-customary rate for providing the medication to Blue Cross's insureds, *id.* ¶ 198.

Blue Cross also cites *Vanguard Plastic Surgery, PLLC v. Aetna Life Insurance Co.*, 2023 WL 3171963 (S.D. Fla. Mar. 27, 2023), to support its position that alleged verification and preauthorization cannot form the basis of a contract, but as discussed earlier, InfuCare has alleged more than that by discussing the industry norm, *see* Section III.A, and this case was decided under Florida law, which deems price a "generally … essential term of an enforceable contract," *Vanguard Plastic Surgery*, 2023 WL 3171963, at *5. The same is true of *Chiron Recovery Center, LLC v. United Healthcare Services, Inc.*, 2020 WL 3547047, at *7 (S.D. Fla. June 30, 2020).

Other cases cited by Blue Cross were decided at the summary judgment stage. *See Cedars Sinai Med. Ctr. v. Mid-West Nat'l Life Ins. Co.*, 118 F. Supp. 2d 1002, 1005 (C.D. Cal. 2000); *Ambulatory Infusion Therapy Specialists, Inc. v. Unicare Life & Health Ins. Co.*, 2007 WL 1520994, at *1 (S.D. Tex. May 22, 2007).

### B. Breach of Implied Contract

Next, Blue Cross argues that InfuCare's claim for breach of implied contract should also be dismissed for the same reasons as the express-contract claim. Def.'s Br. at 10–13. InfuCare responds that it has sufficiently alleged an implied contract based on the parties' conduct. Pls.' Resp. at 13. InfuCare also responds that Blue Cross knew that it was filling the three insureds' prescriptions for a year with a reasonable expectation that Blue Cross would be paying for the medication, and Blue Cross failed to mitigate InfuCare's harm. *Id.*; Compl. ¶ 13.

To state a claim for breach of implied contract under Illinois law, "a plaintiff must allege that (1) a contract existed, (2) the plaintiff performed his obligations under that contract, (3) the defendant breached the contract, and (4) the plaintiff suffered damages as a result of that breach." *Olson v. Ferrara Candy Co.*, 275 N.E.3d 439, 460 (Ill. App. Ct. 2025). As the name of the claim suggests, "[a]n implied contract can be created as a result of the parties' actions, even if there is no express contract between them," and such a contract "can be implied from the facts and circumstances that demonstrate the parties' intent to be bound." *Id.* And "[u]nlike an express contract … an agreement in an implied-in-fact contract is created through the actions and conduct of the parties." *Id.*; *see also Trapani Constr. Co. v. Elliot Grp., Inc.*, 64 N.E.3d 132, 143 (Ill. App. Ct. 2016) ("Acceptance of a contract implied in fact … can be proven by circumstances demonstrating that the parties intended to contract and by the general course of dealing between the parties."). So "[a]n implied contract arises from a promissory expression which may be inferred from the facts and

circumstances and the expressions on the part of the promisor which show an intention to be bound." *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 591 (N.D. Ill. 2022) (cleaned up).

Here, InfuCare claims that Blue Cross's course of conduct—issuing oral preapprovals to InfuCare—gave rise to an implied contract, when considered in the context of the customs in the specialty pharmacy industry. Compl. ¶¶ 229–30, 235–36, 241–42. InfuCare alleges that it accepted Blue Cross's offer by dispensing the medication to Blue Cross's insureds. *Id.* ¶¶ 234, 240, 246. At the pleading stage, this is enough. *See Small v. Oxford Health Ins., Inc.*, 2019 WL 851355, at *5 (D.N.J. Feb. 21, 2019). So for the same reasons as discussed in Section III.A of the Opinion, InfuCare has sufficiently pleaded its breach of implied contract claim, and the motion to dismiss is denied.

**C. Unjust Enrichment**

Lastly, Blue Cross argues that the unjust-enrichment claim (sometimes called a *quantum-meruit* claim), which is pleaded in the alternative to the contract claims, fails to allege that InfuCare conferred a benefit on Blue Cross, and instead the benefit was conferred only on the individual insureds. Def.'s Br. at 14. InfuCare responds that the medication was worth more than $6.6 million, so Blue Cross benefited from at least that amount in savings. Pls.' Resp. at 15.

As a threshold matter, InfuCare is allowed to plead alternative claims of breach of contract and unjust enrichment. *See Bus. Dev. Servs., Inc. v. Field Container Corp.*, 422 N.E.2d 86, 94 (Ill. App. Ct. 1981); *see also* Fed. R. Civ. P. 8(d)(2)–(3)

(permitting parties to plead two or more claims or defenses in the alternative, regardless of consistency). An unjust-enrichment claim allows a party to recover "for the reasonable value of services non-gratuitously rendered, but where no contract exists to dictate payment." *Bernstein & Grazian, P.C. v. Grazian & Volpe, P.C.*, 931 N.E.2d 810, 826 (Ill. App. Ct. 2010). "To recover under a *quantum meruit* theory, the plaintiff must prove that: (1) he performed a service to benefit the defendant, (2) he did not perform this service gratuitously, (3) the defendant accepted this service, and (4) no contract existed to prescribe payment for this service." *Id.* at 825–26 (cleaned up). To recover under an unjust-enrichment theory, the provider of the services "must show that valuable services were furnished by him, that they were received by the defendant, and that the circumstances are such that it would be unjust for the defendant to retain these without paying for them." *Id.* at 826 (cleaned up).

Blue Cross is correct that a plaintiff bringing an unjust-enrichment claim must allege that it has conferred a benefit upon a defendant. *See Archon Constr. Co. v. U.S. Shelter, LLC*, 78 N.E.3d 1067, 1074 (Ill. App. Ct. 2017). But the Seventh Circuit has distinguished between "the scenario in which [a party] attempts to impose on a third party liability for work done under an explicit contract between two different parties, *merely* because the third party benefited from the work" and "a scenario where the imposition of quasi-contractual liability is sought because [the third party] not only benefited from [a contracting party's] work, but enticed [the contracting party] to undertake the work in the first place and then refused to see [that party] paid." *Midcoast Aviation, Inc. v. Gen. Elec. Credit Corp.*, 907 F.2d 732, 739 (7th Cir. 1990) (cleaned

up). InfuCare's allegations align more closely with the second scenario, because InfuCare alleges that it provided services to Blue Cross's insureds with the expectation that the pharmacy would be compensated at the "usual and customary rate" based on Blue Cross's "numerous written and oral assurances." Compl. ¶¶ 12, 198–201. This is enough to plead an unjust-enrichment claim against Blue Cross.

Blue Cross cites *Marque Medicos Farnsworth, LLC v. Liberty Mutual Insurance Co.*, 117 N.E.3d 1155 (Ill. App. Ct. 2018), to support its argument that InfuCare has not bestowed a benefit on Blue Cross. Def.'s Br. at 14. But *Marque Medicos* is not directly applicable. In *Marque Medicos*, the health provider alleged that it had not been paid for treatment that it provided to an insured for a work-related injury. 117 N.E.3d at 1158. To adequately state a claim for breach of contract in law (yet another label of unjust enrichment), "a plaintiff must allege specific facts in support of the conclusion that it conferred a benefit upon the defendant which the defendant has unjustly retained in violation of fundamental principles of equity and good conscience." *Id.* at 1161 (cleaned up). Applying this standard, the state appellate court affirmed the dismissal of the health provider's unjust-enrichment claim because "the complaint alleges no facts specifying the benefit the providers bestowed on defendants; they provided a benefit—namely, medical services—only to the injured employee." *Id.* at 1161. In contrast, InfuCare alleges providing Blue Cross with a benefit of "savings of more than $6.6 million, including the premiums received from their [i]nsureds' policies." Pls.' Resp. at 15; Compl. ¶¶ 197, 204, 207, 253–54.

Blue Cross also cites *Angelina Emergency Medicine Associates PA v. Health Care Service Corp.*, 506 F. Supp. 3d 425 (N.D. Tex. 2020), for the same proposition. In *Angelina Emergency Medicine*, over 50 physicians associations sued insurance companies and medical organizations, alleging that they had been underpaid for emergency services. 506 F. Supp. 3d at 430. The court dismissed the unjust-enrichment claim, reasoning that "[s]erving a defendant's *customers* is hardly the same as serving the defendant *itself*." *Id.* at 432 (emphases in original). But unlike in this case, the plaintiffs in *Angelina Emergency Medicine* do not appear to have alleged that the insurers engaged in any *conduct* to give rise to an unjust-enrichment claim. Returning to *Midcoast Aviation*, the facts described in *Angelina Emergency Medicine* are more similar to the first scenario in which a party "attempts to impose on a third party liability for work … *merely* because the third party benefited from the work," which is outside the scope of unjust enrichment. 907 F.2d at 739.

Finally, Blue Cross cites *AMISUB (SFH), Inc. v. Cigna Health & Life Insurance Co.*, 142 F.4th 403 (6th Cir. 2025), for the assertion that a third-party cannot force an insurer to cover or pay more than it has contracted with its insured to pay. Def.'s Br. at 15. Blue Cross argues that this would challenge the limits of the insurance coverage that Blue Cross has contracted with its insureds to provide. *Id.* But central to the court's decision in *AMISUB* was the question of what an insurer is legally required to pay under specific federal and state statutes, such as the Affordable Care Act and Tenn. Code Ann. § 56-7-2355(b)(1). *See* 142 F.4th 403, 408–12. No such statutes are at issue here. So this decision too does not help Blue Cross.

In sum, the unjust-enrichment claim is adequately pleaded. Of course, as the case progresses, InfuCare eventually must prove the elements of the claim. But at the pleading stage, InfuCare has alleged enough. The unjust-enrichment claim survives.

## IV. Conclusion

Blue Cross's motion to dismiss, R. 74, is denied. All of the claims survive the motion to dismiss. With this decision in place, Blue Cross must answer the complaint by October 14, 2026. The parties shall confer on a discovery schedule, and file a joint status report proposing a discovery schedule by October 16, 2026.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 28, 2026